## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

DEMETRICH JOHNSON ON
BEHALF OF TKJ, A MINOR,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C11-0102

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        A.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . 5
             1.   Takaysha Johnson's Testimony . . . . . . . . . . . . . . . . 5
             2.   Demetrich Johnson's Testimony . . . . . . . . . . . . . . . 7
             3.   Christa Johnson's Testimony . . . . . . . . . . . . . . . . . 8
        B.   2009 Educational Report for Johnson . . . . . . . . . . . . . . . . . 10
        C.   Johnson's Medical History . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 13
        B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . 15
             1.   Dooley's Opinions . . . . . . . . . . . . . . . . . . . . . . . 16
             2.   Stuffed Animals . . . . . . . . . . . . . . . . . . . . . . . . . 19
             3.   Treating Source Opinions . . . . . . . . . . . . . . . . . . . 21
                  a.   Dr. Wheaton's Opinions . . . . . . . . . . . . . . . 21
                  b.   Tatarka's Opinions . . . . . . . . . . . . . . . . . . 24

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VII.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Demetrich Johnson on behalf of her minor daughter, Takaysha Kwantanae Johnson, on October 7, 2011, requesting judicial review of the Social Security Commissioner's decision to deny an application for Title XVI supplemental security income ("SSI") benefits for Takaysha.  Johnson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits for Takaysha.  In the alternative, Johnson requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On February 11, 2009, Demetrich Johnson applied for SSI benefits on behalf of her minor daughter.[1]  In the application, Demetrich alleged that her daughter, Takaysha, became disabled on June 1, 2004 due to ADHD and asthma.[2]  The application was denied on April 3, 2009.  On May 21, 2009, the application was denied on reconsideration.  On

---

[1] Prior to the 2009 application, Demetrich Johnson applied for SSI benefits on behalf of her daughter in 2004.  The 2004 application was denied, and no further appeal was taken.  In the decision presently before the Court, the ALJ declined to reopen the earlier application for SSI benefits.  *See* Administrative Record at 25.  In her brief, Johnson offers no challenge to the ALJ's decision not to reopen the 2004 application.  *See* docket number 12.  Accordingly, the Court will give no further consideration to the earlier 2004 application for SSI benefits.

[2] 20 C.F.R. § 416.501 provides that "[p]ayment of benefits may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." *Id.* Accordingly, the ALJ determined that "[a]n application for supplement security income must be filed in order for a claimant to be eligible for benefits.  Therefore, the first date relevant for onset date consideration for the Title XVI application is the protective filing date of February 4, 2009." Administrative Record at 25.  Both parties agree that the proper disability onset date in this case is February 4, 2009, the protective filing date of Johnson's application for SSI benefits on behalf of her daughter.  *See* Johnson's Brief (docket number 12) at 1, n. 1; Commissioner's Brief (docket number 13) at 3, n. 1.

June 1, 2009, Johnson requested an administrative hearing before an Administrative Law Judge ("ALJ"). On August 3, 2010, both Demetrich Johnson and her daughter, Takaysha, appeared via video conference with their attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Both Demetrich and Takaysha testified at the hearing. Christa Johnson, Takaysha's grandmother, also testified at the hearing. In a decision dated August 20, 2010, the ALJ denied the claim. The ALJ determined that Takaysha Johnson was not disabled as defined in the Social Security Act, and not entitled to SSI benefits. Johnson appealed the ALJ's decision. On August 4, 2011, the Appeals Council denied the request for review. Consequently, the ALJ's August 20, 2010 decision was adopted as the Commissioner's final decision.

On October 7, 2011, Demetrich Johnson filed this action for judicial review. The Commissioner filed an Answer on February 28, 2012. On March 30, 2012, Johnson filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that Takaysha is not disabled. On May 29, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 11, 2012, Johnson filed a reply brief. On January 17, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because

[a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Administrative Hearing Testimony

#### 1. Takaysha Johnson's Testimony

Takaysha Johnson was born in 1998. At the hearing, the ALJ inquired as to Takaysha's grades in school. Takaysha indicated that she gets "A" grades through "D-" grades. She stated that she has difficulty in social studies, math, and remembering things. When discussing homework, Takaysha testified that sometimes she does not do her homework because "I don't really understand it, and I ask my mom for help, and if -- you know, she helps me, but it's just kind of difficult for me for certain homework, and I sometimes don't like to do it."[3]

The ALJ also asked Takaysha to discuss her personal hygiene habits:

Q:    Can you bathe and get dressed by yourself?
A:    Yeah, most of the time.

---

[3] Administrative Record at 57.

Q:     When would you not be able to take -- to do things like
       that?
A:     Well, sometimes I can't button clothes and stuff like
       that because --
Q:     Why not?
A:     Well, it, it's just my hands are kind of shaky, and I
       can't button, and I get really upset, and I don't wear it
       so --
Q:     Why are your hands shaking?
A:     Well, I don't know.  It's just -- I just -- it just -- think --
       I just -- it takes some time to do things, and I don't like
       to wait, I just -- I don't really know.
Q:     Can you fix your hair?
A:     Yeah.

(Administrative Record at 58.)

When asked whether she helped her mother with household chores, Takaysha responded that she did not help with chores.  The ALJ inquired how Takaysha spent her day when she was not at school.  Takaysha stated that "[u]sually I just stay in my pajamas all day or -- and play video games or things like that.  Well, that's usually what I do almost every day."[4]  Takaysha also explained that she belongs to a peer group, where she and other girls her age spend time together one day per week.

Takaysha's attorney also questioned Takaysha.  Takaysha's attorney asked Takaysha whether she had difficulty getting along with others at school:

Q:     Now I understand that you've had some, some trouble
       with fighting in school before?
A:     Yeah.
Q:     How often does that come up?
A:     Well, not a lot.  It just -- it's not a lot.  It's just
       sometimes when just we can -- we just can't talk to
       other people that, that our friends don't like.  It's very
       -- I don't, I don't -- like I like to hang out with people
       that my friends don't like because they're my friends,
       too, but it's hard to keep friends.  For me it is so --

---

[4] Administrative Record at 58-59.

> Q:    What is it that makes it hard for you to keep friends?
> A:    Just basic jealousy, just hanging out with somebody more than others.
> Q:    Now do you have, do you have any problems as far as temper is concerned in school?
> A:    Yeah.
> Q:    Could you describe what happens as far as the temper is concerned?
> A:    Well, it happens almost everywhere just like maybe at home[,] at the pool.   Well, it can be happening anywhere.  I just -- I can get really mad at times.
> Q:    How often does that happen to you?
> A:    Like every day.

(Administrative Record at 61-62.)

Takaysha's attorney and Takaysha also discussed her stuffed animals.  Takaysha testified that during the summer, she spends more time with her stuffed animals than with her friends or her mother.  Specifically, Takaysha's attorney inquired:

> Q:    How much of the day presently do you spend just with your stuffed animals and talking with them?
> A:    Usually when I'm upstairs playing video games or -- well, yeah, that's basically it or when I come upstairs with my food and eat, I sometimes like put the -- maybe the spoon, fork or something by their mouths, and they eat, too, yeah.
> Q:    Do you talk to them while you're playing your video games?
> A:    Yes.
> Q:    And is this throughout playing your video games that you do this?
> A:    Yeah[.] . . .

(Administrative Record at 65-66.)

### 2.    *Demetrich Johnson's Testimony*

Demetrich Johnson, Takaysha's mother, also testified at the administrative hearing. The ALJ asked Demetrich whether Takaysha needed help getting ready for school in the morning.  Demetrich explained that Takaysha "needs help from the point of getting up,

from me making sure -- trailing behind her to make sure she does everything from brushing her teeth to making sure her clothes are buttoned up correctly to getting her out the door."[5]   The ALJ also inquired about Takaysha's willingness to do homework. According to Demetrich, Takaysha "very rarely" does her homework.  Demetrich stated that she tries to help Takaysha with her homework, particularly in the areas of math, social studies, and spelling.   Demetrich explained that "[w]hen [Takaysha] goes to do [her homework], if she messes up one time or can't get something right, she just wants to give up or if she just feels like she just can't do it, she won't do it at all."[6]   Demetrich also indicated that Takaysha has difficulty sleeping due to nightmares.  Lastly, the ALJ asked Demetrich why she filed for disability for Takaysha.  Demetrich replied that:

> I filed because I, I was trying everything that I could.  I was noticing that Takaysha was having problems from the average of kids two and three years old that I have been around when my mom had foster kids and things like that, and I started noticing just different things that I felt was un-normal, and so I took her to a therapist, and I was talking to him about her, and that's when we had -- well, no, actually at three I put her into preschool, because it just seemed like she needed to be around more kids, try to get the social thing going, and it's just persisting.    Takaysha is getting older but she has symptoms.   She's always dealt with aggression, anxiety, attention problems, hyperactive, irritable, mood swings, outbursts, and I just thought that I needed to try to find some help on what was going on.

(Administrative Record at 73.)

### 3.   *Christa Johnson's Testimony*

Christa Johnson, Takaysha's grandmother, also testified at the administrative hearing.  The ALJ questioned Christa:

---

[5] Administrative Record at 68.

[6] Administrative Record at 70.

> Q:   And what is it you'd like to tell me today about
>       Takaysha's -- the application for disability on behalf of
>       Takaysha?
>
> A:   I just, I just believe for her sake, it would help her in
>       doing the things that she needs to do.
>
> Q:   Such as?
>
> A:   I help her.  I help her with personal things.  I have to
>       buy her clothes.  I have to buy her personal products.
>       I do homemaker type things with her.  I do to my
>       abilities.

(Administrative Record at 77.)

Demetrich and Takaysha's attorney also questioned Christa.  He asked Christa to describe helping Takaysha with homemaking skills:

> Q:   I know that you had mentioned that you tried to help
>       Takaysha towards some homemaking skills.  Those --
>       have you had any success in that regard in working with
>       her to develop some homemaking skills?
>
> A:   Yes, I -- just, just last month she was a big
>       improvement just for doing one thing.  She did
>       complete a task, which -- baking -- she was -- she had
>       to do everything from scratch, but she had to bake,
>       measure out things, put things away, wash up after --
>       wash the dishes, put everything away, but you have to
>       continue to encourage her to do that. . . .  [S]o when
>       she completed that task that day, which took about three
>       or four hours altogether doing the baking -- but she
>       completed it, she was proud of herself.
>
> Q:   And this was -- what was the item that was baked?
>
> A:   Muffins.
>
> Q:   About three to -- how long?
>
> A:   It took about three or four hours.
>
> Q:   And but you were persistent and you stayed with her.
>
> A:   Stayed with her.  It takes, it takes staying with her.
>
> Q:   Is that fairly typical that Takaysha needs that for not
>       just baking but for any kind of activity?
>
> A:   It's the same.

(Administrative Record 77-78.)

### B. 2009 Educational Report for Johnson

In 2009, Takaysha's teacher, Kimberly Dooley, filled out a Teacher Questionnaire for the Social Security Administration. Dooley indicated that she was Takaysha's fifth grade teacher, and had known her since Takaysha was a first grade student. Dooley reported that Takaysha was "on grade level" in math and written language, but "below grade level" in reading. According to Dooley, Takaysha has an "obvious problem" with following rules, relating experiences and telling stories, and interpreting meaning of facial expression, body language, and sarcasm. Dooley also indicated that Takaysha has a "serious problem" with playing cooperatively with other children and seeking attention appropriately. Lastly, Dooley reported that Takaysha has a "very serious problem" with making and keeping friends and expressing anger appropriately. Dooley reported Takaysha meets regularly with a school counselor, and opined she "has made a lot of growth."[7] With regard to caring for herself, Dooley found that Takaysha has an "obvious problem" with  being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in her own mood, and using appropriate coping skills to meet daily demands of the school environment. Dooley also determined that Takaysha has a "serious problem" with handling frustration appropriately.

### C. Johnson's Medical History

On February 2, 2005, Dr. Allyson Wheaton, a treating source, filled out a Psychiatric Impairment Questionnaire for a child, at the request of Johnson's attorney. Dr. Wheaton diagnosed Johnson with ADHD. Dr. Wheaton identified the following symptoms for Takaysha:  sleep disturbance, emotional lability (easily frustrated), and difficulty thinking or concentrating. Dr. Wheaton found no restriction of activities of daily living, marked difficulties in maintaining social functioning, and constant deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely

---

[7] Administrative Record at 199.

manner.  Additionally, Dr. Wheaton determined that Takaysha had marked limitations in social functioning and concentration, persistence, and pace.

On March 31, 2009, Dr. Mary Greenfield, M.D., reviewed Takaysha's medical records for Disability Determination Services ("DDS") and found Takaysha had: (1) no limitations in acquiring and using information, (2) less than marked limitations in attending and completing tasks, (3) less than marked limitations in interacting and relating to others, (4) no limitations in moving about and manipulating objects, and (5) less than marked limitations in caring for herself.  Dr. Greenfield concluded that:

> Based on the evidence in file, [Takaysha] is able to complete a sufficient range of activities for a child 10 years old, at a sufficient pace and impairments do not cause marked and severe functional limitations.

(Administrative Record at 309.)

On January 7, 2010, Takaysha met with Kathleen Wild, CPNP, ARNP, to create a remedial service plan.  Wild diagnosed Takaysha with adjustment disorder and psychosocial and environmental problems.  Wild noted that:

> Takaysha is having problems with attention and blurting out at school.  She is very sensitive and having problems coping with daily stressors.  She reports that she gets angry frequently which causes problems with friendships at times.  At home she needs to have the last word and can be defiant.  Takaysha finds comfort in holding and talking to her stuffed animals which is concerning for her mother.  Her mother is frequently telling her to put them down.  Her temper and emotional reactions have been intensifying.

(Administrative Record at 321.)  Based on Takaysha's difficulties, Wild developed a plan for improving Takaysha's coping skills, interacting with others, and anger management skills.  Takaysha was directed to work with a caseworker to implement and complete the remedial service plan.

Six months later, on July 7, 2010, Takaysha met with Angela Cantrell, LISW, to develop another remedial services plan.  Cantrell diagnosed Takaysha with ADHD,

depressive disorder, anxiety disorder, and psychosocial and environmental problems.
Cantrell noted that:

> Takaysha is anxious and shy in social situations, anxious to
> order food or ask for assistance at a store. . . . [Takaysha's
> caseworker] reported Takaysha reports having a sad feeling
> most of the time.  Takaysha rarely expresses happiness or
> excitement even when the situation is very positive.  Within
> the last 6 months, Takaysha has had two verbal and 'in your
> face' altercations with peers resulting in a meeting with the
> principle [*sic*] of her school.  Takaysha continues to find
> comfort holding and talking to her stuffed animals when upset.

(Administrative Record at 358.)  Similar to the January 2010 plan, Cantrell developed a
plan involving improvement of coping skills, interacting with others, and anger
management skills.  Takaysha was again directed to work with a caseworker to implement
and complete the remedial service plan.

On August 1, 2010, Joan Tatarka, LISW, another treating source, at the request of
Takaysha's attorney, filled out a Mental Medical Source Statement for Johnson.  Tatarka
diagnosed Takaysha with ADHD.  Tatarka noted that Takaysha takes medication for
ADHD and needs supervision to complete school work and tasks.  Tatarka further
indicated that Takaysha's mother reports "problems with hygiene, difficulty [with] tasks
like tying shoes [and] fastening buttons.  [Takaysha] talks to stuffed animals like they are
friends.  Often lonely.  [She k]nows that stuffed animals are toys, but pretends they are
friends."[8]  Tatarka identified the following symptoms for Takaysha: difficulty thinking
or concentrating, pathological dependence, emotional withdrawal or isolation,
hyperactivity, and easy distractibility.  With regard to limitations, Tatarka opined that
Takaysha "[n]eeds supervision to complete tasks, especially at home.  [She] refuses to do

---

[8] Administrative Record at 377.

tasks when angry [at] her mother. [She s]eems to do ok[ay] in school."[9]   Tatarka also noted that Takaysha's hygiene is a "problem."   Overall, Tatarka concluded that Takaysha's prognosis was "fair."

On August 2, 2010, at the request of Takaysha's attorney, Dr. Wheaton filled out a Mental Medical Source Statement for Takaysha. Dr. Wheaton diagnosed Takaysha with ADHD. Dr. Wheaton noted that talking to stuffed animals and hygiene were issues for Takaysha. Dr. Wheaton identified the following symptoms for Takaysha: difficulty thinking or concentrating, pathological dependence, emotional withdrawal or isolation, hallucinations or delusions (talking to stuffed animals), hyperactivity, and easy distractibility. Dr. Wheaton determined that Takaysha was seriously limited, but not precluded from: (1) sustaining an ordinary routine without special supervision; (2) carrying out detailed instructions; (3) interacting with the general public; and (4) adhering to basic standards of neatness and cleanliness. Dr. Wheaton concluded that Takaysha's prognosis was "fair."

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Takaysha was not disabled. In making this determination, the ALJ was required to complete the three-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.924; *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718 (8th Cir. 2005); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853 (8th Cir. 2003). In Moore, the Eighth Circuit Court of Appeals explained the three-step sequential test as follows:

> At the first step, the ALJ determines whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At the second step, an ALJ determines whether the child has an impairment that is 'severe.' 20 C.F.R. § 416.924(c). At the third step, an ALJ determines whether

_____

[9] *Id.* at 379.

> the child's impairment is medically or functionally equivalent
> in severity to the impairments listed in the disability
> regulations.   20 C.F.R. § 416.924(d); 20 C.F.R. pt. 404,
> subpt. P, app. 1.

*Moore*, 413 F.3d at 721.   At step two, "if the impairments result in no more than minimal functional limitations, the impairments are not severe and the child is not disabled." *Pepper*, 342 F.3d at 854.   Under step three, "a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment."   *Id.* (citing 20 C.F.R. § 416.926(a)).   The Social Security Regulations provide that a child's impairments may also functionally equal a listed impairment under certain circumstances. *See* 20 C.F.R. § 416.926a(a).   An impairment is functionally equal to a listed impairment, "if there is an 'extreme' limitation in one of six specific functional domains, or a 'marked' limitation in at least two domains." *Pepper*, 342 F.3d at 854; 20 C.F.R. § 416.926a(a).   The domains to be considered by the ALJ are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being.   *See* 20 C.F.R. § 416.926a(a)(1)(i)-(vi).

The ALJ applied the first step of the analysis and determined that Takaysha had not engaged in substantial gainful activity since the date her application for SSI benefits was filed.   At the second step, the ALJ concluded from the medical evidence that Takaysha had the following severe combination of impairments:  history of asthma and ADHD.   At the third step, the ALJ found that Takaysha did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.   Also at the third step, the ALJ determined that Takaysha did not have an impairment or combination of impairments that functionally equaled the listings.   Therefore, the ALJ concluded that Takaysha was not disabled.

### B. Objections Raised By Claimant

Takaysha argues that by failing to find that she has a "marked" limitation in the domain of "caring for yourself," the ALJ erred in finding that she is not disabled.[10] By not finding a "marked" limitation in the domain of "caring for yourself," Johnson asserts that the ALJ: (1) failed to properly evaluate a questionnaire from Kimberly Dooley, Takaysha's school teacher; (2) failed to grasp the significance of Takaysha's habit of talking to stuffed animals as a self-soothing, developmentally regressive behavior; and (3) failed to properly evaluate the medical source statements from Dr. Wheaton and Joan Tatarka, LISW, particularly their opinions regarding Takaysha's "seriously limited" ability to adhere to basic standards of neatness and cleanliness. Takaysha concludes that this matter should be remanded for calculation of benefits; or in the alternative, remanded for further consideration of her limitations in the domain of "caring for yourself," as it pertains to the overall issue of medical equivalence to the listings at step three of the sequential test.

In determining functional equivalence for children, the Social Security Administration defines functional equivalence as follows: "By 'functionally equal the listings,' we mean that your impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations to two domains of functioning[.]" 20 C.F.R. § 416.926a(a). In assessing a child's functional limitations, an ALJ must consider what a child cannot do, has difficulty doing, needs help doing, and is restricted from doing. *Id.* "When making a finding regarding functional equivalence, we will assess the interactive and cumulative

---

[10] In her decision the ALJ determined that Takaysha had a "marked" limitation in the domain of "interacting and relating with others." *See* Administrative Record at 38-39. As such, had the ALJ also determined that Takaysha had a "marked" limitation in the domain of "caring for yourself," as Johnson argues the ALJ should have, then Takaysha would meet the requirement for disability at step three of the sequential test. *See Pepper*, 342 F.3d at 854 (providing that a claimant's impairment is functionally equivalent to the listings if the ALJ finds a "marked" limitation in at least two domains); *see also* 20 C.F.R. § 416.926a(a).

effects of all of the impairments for which we have evidence, including any impairments you have that are not 'severe.'" *Id*. In order to have a "marked" limitation, a child's impairment(s) must interfere "seriously with your ability to initiate, sustain, or complete activities. . . . 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). Furthermore, when considering whether a child has a 'marked' limitation in any domain, the ALJ must "examine all the information we have in your case record about how your functioning is limited because of your impairment(s), and we compare your functioning to the typical functioning of children your age who do not have impairments." 20 C.F.R. § 416.926a(f)(1).

Turning to the domain of "caring for yourself," the regulations state:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

20 C.F.R. § 416.926a(k).  Generally, this domain requires a determination of whether a child can help him or herself and cooperate with others in taking care of personal needs, health, and safety.  20 C.F.R. § 416.926a(k)(1)(i).  This domain is "characterized by a sense of independence and competence.  The effort to become independent and competent should be observable throughout your childhood."  *Id*.

### 1.    *Dooley's Opinions*

Takaysha argues that the ALJ failed to properly evaluate Dooley's opinions, particularly with regard to her findings in the area of "caring for yourself."  Specifically, Takaysha argues that contrary to the ALJ's findings, the "problems identified by Ms. Dooley are consistent wit [*sic*] 'marked' limitation in 'Caring for Yourself.'"[11] Takaysha acknowledges that the ALJ "summarized" Dooley's opinions, but "failed to

---

[11] Johnson's Brief (docket number 12) at 16.

explain why she found [Takaysha] had a 'less than marked' limitation in this domain."[12] Takaysha concludes that this matter should be remanded because the ALJ's determination on this issue is not supported by substantial evidence on the record as a whole.

As a school teacher, the SSA considers Dooley to be an acceptable, non-medical source. *See* 20 C.F.R. § 416.913(d); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (non-medical sources include school teachers). Social Security Ruling 06-03p explains how the SSA considers opinions from sources not classified as "acceptable medical sources," or "other non-medical sources." *See Id*. SSR 06-03p provides that when considering the opinion of a source that is classified as an other, non-medical source, such as a school teacher, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

---

[12] *Id.* at 17.

In her decision, the ALJ thoroughly addressed and considered Takaysha's ability to care for herself and the domain of "caring for yourself" – including Dooley's opinions, treating source medical opinions, Takaysha's own testimony, and the testimony of Takaysha's mother and grandmother.[13]   In particular, the ALJ noted that:

> In March 2009, Kimberly Dooley, [Takaysha's] teacher, indicated [Takaysha] had a very serious problem handling frustration appropriately; in addition, [Takaysha] had an obvious problem being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment. Notably, Ms. Dooley indicated [Takaysha] had only a slight problem taking care of personal hygiene, caring for physical needs, and knowing when to ask for help; moreover, Ms. Dooley noted [Takaysha] had no problems in cooperating in, or being responsible for, taking needed medications.
>
> In February 2009, [Takaysha's] grandmother reported that [Takaysha] did not wash her hair by herself and did not chose [sic] clothes by herself.  However, [Takaysha's] grandmother did report that [Takaysha] used zippers by herself, buttoned clothes by herself, tied shoelaces, took a bath without help, brushed her teeth, combed her hair, ate using utensils, picked up and put away toys, and hung up clothes.
>
> [Takaysha] testified she can bathe and can generally dress herself.
>
> Upon consideration of all evidence of record, the undersigned finds [Takaysha] has less than marked limitation in the ability to care for herself.

(Administrative Record at 41-42.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Dooley's opinions in accordance with SSR 06-03p.  Furthermore, the Court finds that the

---

[13] *See* Administrative Record at 30-34, 40-42.

ALJ fully and fairly developed the record with regard to Dooley's opinions, and adequately explained her reasoning with regard to those opinions as they apply to the domain of "caring for yourself." *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Stuffed Animals

Takaysha argues that the ALJ failed to fully and fairly develop the record with regard to her habit of talking to her stuffed animals. Specifically, Takaysha argues that in considering the domain of "caring for yourself," the ALJ failed to consider the "self-soothing" and "developmentally regressive" activity of talking to stuffed animals. Takaysha maintains that remand is appropriate for further consideration of this issue.

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed the issue of Takaysha talking to her stuffed animals, and determined that the evidence in the record reflected that Takaysha knew that

the stuffed animals were not real, and only toys.[14]   For example, in discussing Dr. Wheaton's opinions, the ALJ noted that:

> Notably, Dr. Wheaton indicated [Takaysha] has delusions that her stuffed animals are real. This is contradicted, not only by [Takaysha's] testimony, but by her counselor who states [Takaysha] knows her stuffed animals are toys, not real.

(Administrative Record at 31.)  The ALJ also noted in her discussion of the opinions of Takaysha's counselor that Takaysha's mother reported Takaysha talked "to animals like they are friends although [Takaysha] knew that they were only toys."[15]   Finally, in summarizing findings in the record, the ALJ stated:

> [Takaysha] told her counselor that, while she played with her stuffed animals, she would be embarrassed if her school peers knew. This shows she understands that her stuffed animals are not real, but more of a comfort to her.

(Administrative Record at 34.)

In making the ultimate disability decision in this case, including a determination of the level of limitation in the domain of "caring for yourself," it is clear from the ALJ's decision that she thoroughly considered the issue of Takaysha's talking to stuffed animals. The ALJ specifically found that "[Takaysha] told her counselor that, while she played with her stuffed animals, she would be embarrassed if her school peers knew. This shows she understands that her stuffed animals are not real, but more of a comfort to her."[16]  Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to issue of Takaysha talking to stuffed animals. *See Cox*, 495 F.3d at 618.  Accordingly, even if inconsistent conclusions could be drawn on this

---

[14] *See* Administrative Record at 31-34.

[15] *Id*. at 32.

[16] Administrative Record at 34.

issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    Treating Source Opinions

Takaysha argues that the ALJ failed to properly evaluate the opinions of her treating doctor and counselor, Dr. Wheaton and Joan Tatarka, LISW. Specifically, Takaysha argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Wheaton and Tatarka, especially with regard to their opinions regarding her difficulties with basic standards of neatness and cleanliness in the domain of "caring for yourself." Takaysha concludes that this case should be remanded for further consideration of her treating source opinions.

#### a.    Dr. Wheaton's Opinions

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support

a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In her decision, the ALJ addressed Dr. Wheaton's opinions:

> In August 2010, Allyson L. Wheaton, M.D., [Takaysha's] treating psychiatrist, completed a Mental Medical Source Statement on behalf of [Takaysha]. . . . [Takaysha] was diagnosed with ADHD; she has been on medication for ADHD which at times was helpful at school but never seemed helpful at home. . . . Dr. Wheaton noted that [Takaysha's] mother reported some ADHD symptoms at the end of the school year; the mother also reported that [Takaysha] talked to her stuffed animals and her hygiene was an issue. Dr. Wheaton opined that [Takaysha's] prognosis was fair. Dr. Wheaton reported that [Takaysha's] signs and symptoms included difficulty thinking or concentrating, pathological dependence, seclusiveness, emotional withdrawal or isolation, hallucinations or delusions, delusion in that she talked to her stuffed animals, hyperactivity, and easy distractibility. Dr. Wheaton opined that [Takaysha] was seriously limited but not precluded in the ability to sustain an ordinary routine without special supervision, carry out detailed instructions, interact appropriately with the general public, and adhere to

basic standards of neatness and cleanliness. However, Dr. Wheaton also opined that [Takaysha's] abilities were unlimited/very good/satisfactory in the following: understand and remember very short and simple instructions; carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically based symptoms; perform on a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with . . . peers without unduly distracting them or exhibiting behavioral extremes; . . . understand and remember detailed instructions; and maintain socially appropriate behavior. . . . It is noteworthy that Dr. Wheaton's medical source statement is on the form applicable to adults, with opinions as to work-related functioning, and sheds only some light on [Takaysha's] functioning in the domains which the undersigned must consider for this minor child. Notably, Dr. Wheaton indicated [Takaysha] has delusions that her stuffed animals are real. This is contradicted, not only by [Takaysha's] testimony, but by her counselor who states [Takaysha] knows her stuffed animals are toys, not real. This obviously renders Dr. Wheaton's opinions less persuasive. The undersigned cannot, then, give controlling weight to Dr. Wheaton's opinions, but gives some weight to Dr. Wheaton's opinions due to the treating history and clinical findings, and significant weight to Dr. Wheaton's treatment notes themselves.

(Administrative Record at 31.) It is clear from the ALJ's decision that she fully considered Dr. Wheaton's opinions. In fact, the ALJ gave Dr. Wheaton's opinions "some weight." While she did not specifically address Dr. Wheaton's opinion regarding Takaysha's neatness and cleanliness, the ALJ did address the issue of Takaysha's personal hygiene in her decision. Specifically, the ALJ found that:

Notably, Ms. Dooley indicated [Takaysha] had only a slight problem taking care of personal hygiene, caring for physical needs, and knowing when to ask for help; . . .

23

> In February 2009, [Takaysha's] grandmother reported that [Takaysha] did not wash her hair by herself and did not chose [sic] clothes by herself. However, [Takaysha's] grandmother did report that [Takaysha] used zippers by herself, buttoned clothes by herself, tied shoelaces, took a bath without help, brushed her teeth, combed her hair, at using utensils, picked up and put away toys, and hung up clothes.

> [Takaysha] testified she can bathe and can generally dress herself.

(Administrative Record at 41-42.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Wheaton, including her opinions on the issue of neatness and cleanliness. The Court also finds that the ALJ provided "good reasons" both explicitly and implicitly for granting only "some" weight to her opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b.    *Tatarka's Opinions*

Similar to Dooley's opinions, a social worker/counselor like Tatarka, is an acceptable, non-medical source. *See* 20 C.F.R. § 416.913(d); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (non-medical sources include social workers). When considering the opinion of a source that is classified as an other, non-medical source, such as a social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and

any other factors that tend to support or refute the opinion." SSR 06-03p. The Court also bears in mind that:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ addressed Tatarka's opinions:

> Also in August 2010, [Takaysha's] treating therapist, Joan Tatarka, LISW, completed a Mental Medical Source Statement on behalf of [Takaysha]. Ms. Tatarka noted that [Takaysha] had been diagnosed with ADHD and her current GAF as well as her highest GAF in the past year was 60, indicating moderate symptoms. Ms. Tatarka indicated [Takaysha] took medication for Attention Deficit Hyperactivity Disorder, needed supervision to complete school work and tasks, and had been oppositional at home. Ms. Tatarka noted that [Takaysha's] mother had reported problems with hygiene, difficulty with tasks like tying shoes and fastening buttons, and talking to animals like they are friends although [she] knew that they were only toys. Ms. Tatarka opined that [Takaysha's] prognosis was fair. Ms. Tatarka noted that [Takaysha's] signs and symptoms included difficulty thinking or concentrating, pathological dependence, seclusiveness, emotional withdrawal or isolation, hyperactivity, and easy distractibility. Ms. Tatarka opined that [Takaysha] was unable to sustain an ordinary routine without special supervision or adhere to basic standards of neatness and cleanliness; however, she also opined [Takaysha], could satisfactorily . . .

> understand and remember very short and simple instructions,
> carry out very short and simple instructions, perform on a
> consistent pace without an unreasonable number and length of
> rest periods, accept instructions and respond appropriately to
> criticism from supervisors; get along with peers without
> unduly distracting them or exhibiting behavioral extremes, . .
> . understand and remember detailed instructions, . . . and
> maintain socially appropriate behavior. . . . It is noteworthy
> that Ms. Tatarka's medical source statement is on the form
> applicable to adults, with opinions as to work-related
> functioning, and sheds only some light on [Takaysha's]
> functioning in the domains which the undersigned must
> consider for this minor child. Since Ms. Tatarka counsels
> [Takaysha], but does not conduct home visits, any comments
> she makes about [Takaysha's] homelife is obviously based on
> the mother's self-report and, so, those comments are not given
> much weight. . . . The undersigned gives some weight to Ms.
> Tatarka's opinions insofar as based on her treating history and
> clinical findings, but has also considered other evidence,
> particularly from [Takaysha's] teachers.

(Administrative Record at 32-33.) It is clear from the ALJ's decision that she fully considered Tatarka's opinions. In fact, the ALJ gave Tatarka's opinions "some weight." While she did not specifically address Tatarka's opinion regarding Takaysha's neatness and cleanliness, the Court reiterates that the ALJ did address the issue of Takaysha's personal hygiene in her decision.[17]

    Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Tatarka, including her opinion on the issue of neatness and cleanliness. The Court also finds that the ALJ provided "good reasons" both explicitly and implicitly for granting "some" weight to her opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the

---

[17] *See* Administrative Record at 41-42.

conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court concludes that the ALJ's determination that Takaysha has "less than marked" limitations in the domain of "caring for herself" is supported by substantial evidence on the record as a whole. Specifically, with regard to that issue, the Court finds that the ALJ properly considered the opinions of Dooley, Takaysha's school teacher, Dr. Wheaton, Takaysha's treating psychiatrist, and Tatarka, Takaysha's treating counselor. The Court also finds that the ALJ fully and fairly developed the record in this matter, including consideration of Takaysha's talking to stuffed animals in the domain of "caring for yourself." Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.      Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.      The Clerk of Court is directed to enter judgment accordingly.

DATED this ___1st___ day of October, 2012.

_____

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA